475 S.E.2d 356

**DONNA KAYE M., Plaintiff Below, Appellant,**

v.

**JUSTIN ELLIOT M., Defendant Below, Appellee.**

No. 22968.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1996.

Decided July 5, 1996.

Jane Charnock, Charnock and Charnock, Charleston, for Appellant.

Rebecca M. Bell, Bell & Griffith, L.C., Princeton, for Appellee.

PER CURIAM:

This action is before this Court upon appeal from the final order of the Circuit Court of Wyoming County, West Virginia, entered on November 15, 1994. The action concerns litigation between the appellant, Donna Kaye M., and the appellee, Justin Elliot M., in the aftermath of their 1990 divorce.[1] According to the appellant, the circuit court committed error in declining to adopt the recommendations of the family law master concerning certain expenses she incurred for child support and also committed error with regard to certain issues concerning equitable distribution.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the final order of the circuit court is affirmed, in part, reversed, in part, and this action is remanded to that court for further proceedings.

I

The convoluted procedural history of this litigation and the delay in the filing of the audio tapes of hearings conducted by the family law master, and the inadequacy of those tapes, have made our review in this action somewhat difficult. Accordingly, this Court has carefully reviewed the audio tapes and thoroughly examined the exhibits and other matters of record in order to discern the details and circumstances surrounding the respective assertions of the parties.

The parties were married in 1971 and were residing in Wyoming County in 1990 when the appellant instituted divorce proceedings based upon irreconcilable differences. *W.Va. Code,* 48–2–4 [1981]. A son and daughter were born of the marriage, and the son, over the age of 18, is not involved in this litigation. The daughter, born in 1976, is currently married and emancipated from the parties.

The divorce decree, entered on November 2, 1990, incorporated the parties' property settlement agreement and provided that custody of the daughter, then age 14, would be awarded to the appellant. The appellee was required to pay $300 per month in child support for his daughter pursuant to this State's child support guidelines. *See W.Va. Code,* 48A–2–17 [1995], and *W.Va.Code of State Rules,* 78–16–1, *et seq.* The appellee was also required to pay the child's medical expenses. The appellee was given possession of the parties' house and lot, which the parties were permitted to sell "at any time," the proceeds from which sale would be divided equally. In addition, the appellee's stock holdings, acquired through his employment with Norfolk & Western Railway Company,

1. We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

were to be held in a joint account "until sold," the proceeds from which sale would also be divided equally. Finally, as reflected in the divorce decree, the parties waived alimony.

Importantly, the divorce decree made no reference to the appellee's Norfolk & Western Railway Company pension. Nor did it mention a back wage award obtained by the appellee from that employer. Although the evidence in the record does not disclose the exact amounts received by the appellee with regard to either the pension or the back wage award, the appellant asserted below that she was entitled to $15,000 with regard to the appellee's pension and $7,500 with regard to the back wage claim. More specific findings as to those amounts will need to be made by the circuit court upon the remand of this action.

Following the 1990 divorce, the daughter, who had been staying with the appellee, lived with the appellant until October 1992 and, thereafter, chose to return to the appellee's residence until her marriage and emancipation. After the divorce decree, the parties filed various petitions for contempt concerning visitation and the payment of child support. Those petitions were generally resolved by agreement of the parties. In addition, the appellee filed a petition for a change of custody. In October 1992, however, the circuit court entered an order confirming the appellant's award of custody of her daughter. Throughout this litigation, legal custody of the daughter has remained with the appellant.

The evidence submitted by the appellant below indicated that, following the divorce, the daughter developed a number of problems while residing with the appellee. According to the appellant, her daughter, while residing with the appellee, experienced failing grades in school and a substantial number of unexcused school absences. In addition, she was arrested for shoplifting and became pregnant. Moreover, although not necessarily attributable to the appellee, a psychological report submitted by the appellant suggested that her daughter had a propensity toward illegal drug and alcohol use. According to the appellant, she left her employment in order to provide her daughter increased supervised care. The appellant's evidence indicated that, while residing with the appellant, her daughter's grades and school attendance improved, and she achieved a more stable psychological condition through counseling. On the other hand, the appellee denied that his daughter had developed problems while residing with him and stated that his daughter had expressed a desire to live with her father.

In the litigation below, the appellant sought recovery for a number of expenses concerning her daughter beyond the amounts the appellee had been paying for child support. Specifically, the appellant asserted before the family law master that she was entitled to $868 for medical expenses, $186.80 for court costs and $3,000 for attorney fees. Those expenses, totaling $4,054.80, were confirmed by the family law master and awarded by the circuit court pursuant to the November 15, 1994, final order. Those expenses are not contested in this appeal, and the final order of the circuit court, in that regard, is therefore affirmed.

In addition, however, the appellant asserted before the family law master that she was entitled to $16,167 for lost wages, $405 for travel expenses, $3,900 for automobile expenses and $100 for her daughter's summer school tuition. In addition, the appellant asserted before the family law master that she was entitled to an equitable distribution of those items not mentioned in the 1990 divorce decree, i.e., the appellee's Norfolk & Western Railway Company pension and the appellee's back wage award obtained by the appellee from that employer. According to the appellant, the appellee had "concealed marital assets" during the original divorce proceedings.

In November 1993, the family law master recommended that the appellant recover the $4,054.80, as stated above. In addition, the family law master recommended that the appellant recover the other expenses listed above and also receive an equitable distribution of the appellee's railway pension and back wage award. Moreover, the family law master noted that the appellant was unem-

ployed and should retain custody of her daughter.

As stated above, the circuit court in the final order of November 15, 1994, awarded the $4,054.80 in expenses to the appellant. The circuit court, however, disallowed the remaining listed expenses and also disallowed the appellant's request for equitable distribution of the Norfolk & Western Railway Company pension and the appellee's back wage claim. The circuit court based its denial of relief concerning the expenses and the equitable distribution claims upon its conclusion that, beyond the $4,054.80 awarded, the divorce decree had settled all matters between the parties. Furthermore, the circuit court determined that the issues of custody and further child support were moot, in view of the daughter's marriage and emancipation.

## II

This Court has often observed that a recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W. Va.Code,* 48A–4–16 [1993], *W. Va.Code,* 48A–4–20 [1993], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* As we recently stated in syllabus point 1 of *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995): "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." *See also* syl. pt. 1, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). With regard to findings of fact, in particular, we noted in syllabus point 3 of *Stephen L.H.:* "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." *See also* syl. pt. 1, *Higginbotham v. Higginbotham,* 189 W.Va. 519, 432 S.E.2d 789 (1993). Of course, the final order of a circuit court in such cases is reviewable by this Court. *Magaha v. Magaha,* 196 W.Va. 187, 189–90, 469 S.E.2d 123, 126 (1996); *Hinerman v. Hinerman,* 194 W.Va. 256, 259, 460 S.E.2d 71, 74 (1995); *Marilyn H. v. Roger Lee H.,* 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995). *See generally* syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996); *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995).

The ability to conduct appellate review, however, is dependent upon the quality of the record presented by the parties. In this action, the appellee does not contest the assertion of the appellant that she incurred certain medical expenses, court costs and attorney fees, totaling $4,054.80, with regard to the support of her daughter. The circuit court awarded that amount to the appellant upon the recommendation of the family law master, and, as stated above, the final order of the circuit court, in that regard, is affirmed. The record before this Court, however, is completely inadequate concerning the appellant's assertion that the circuit court should also have awarded her $16,167 for lost wages, $405 for travel expenses, $3,900 for automobile expenses and $100 for her daughter's summer school tuition.

As counsel for the appellant acknowledged during oral argument before this Court, this appeal rests largely upon the audio tapes of the hearings conducted by the family law master in January and October 1993. Following unsuccessful efforts below to obtain the audio tapes, counsel for the appellant indicated, in her brief, that the tapes were "apparently no longer available." Subsequent to oral argument, however, this Court received five audio cassettes concerning the hearings in question from the Circuit Clerk of Wyoming County. In the letter of transmittal, the circuit clerk stated that the five cassettes were all that office was "able to locate."

In any event, a review of the audio tapes proved disappointing. Although the audio tapes are, in fact, of the January and October 1993 hearings conducted by the family law master, they contain only the testimony of the appellee and the parties' daughter and colloquies between counsel and the family law master. Lengthy portions of the audio tapes are blank, and no testimony from the

appellant can be found. As a consequence, this Court has nothing upon which to review the appellant's assertion that the circuit court should have awarded her $16,167 for lost wages, $405 for travel expenses, $3,900 for automobile expenses and $100 for her daughter's summer school tuition. The testimony of the appellee and the parties' daughter made no reference to those matters. In particular, although the available evidence suggests that the problems experienced by the daughter following the parties' divorce were quite serious, this Court is without any explanation, in the evidence or in the pleadings, as to the manner in which the expenses sought were related to those problems. Accordingly, under the circumstances of this action, a remand to the circuit court pursuant to *W.Va.R.Civ.P.* 80(e), concerning the restoration of missing testimony, is warranted.[2]

■ In syllabus point 2 of *South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va. 439, 152 S.E.2d 721 (1967), this Court held: "When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development." *See Young v. Young,* 194 W.Va. 405, 409, 460 S.E.2d 651, 655 (1995); syl. pt. 6, *Downing v. Ashley,* 193 W.Va. 77, 454 S.E.2d 371 (1994); *Henry v. Johnson,* 192 W.Va. 82, 85–86, 450 S.E.2d 779, 782–83 (1994); syl. pt. 4, *Patricia Ann S. v. James Daniel S.*, 190 W.Va. 6, 435 S.E.2d 6 (1993); syl. pt. 2, *Higginbotham, supra;* syl., *McFarland v. Dept. of Finance and Administration,* 180 W.Va. 171, 375 S.E.2d 803 (1988); *In the Matter of Sommerville,* 178 W.Va. 694, 698, 364 S.E.2d 20, 24 (1987); syl., *Walls v. Walls,* 178 W.Va. 635, 363 S.E.2d 521 (1987); syl. pt. 3, *Heydinger v. Adkins,* 178 W.Va. 463, 360 S.E.2d 240 (1987); syl. pt. 1, *Gooden v. Frisby,* 176 W.Va. 547, 346 S.E.2d 66 (1986). *See also State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994), stating that this Court "will ignore those issues where the missing record is needed to give factual support to the claim [;]" 1B M.J., *Appeal and Error,* § 189 (1995), stating that the burden is upon the appellant to "provide the court with a record which substantiates the claim of error."

■ Problems specifically relating to audio tapes of family law master hearings were considered by this Court in *State ex rel. Sullivan v. Watt,* 187 W.Va. 447, 419 S.E.2d 708 (1992). In *Sullivan,* we discussed the provisions of *W.Va.Code,* 48A–4–10(d) [1990], then in effect, concerning circuit court review of the record of family law master proceedings, and the provisions of *W.Va.R.Civ.P.* 80(e), concerning the restoration of missing testimony. Syllabus point 10 of *Sullivan* holds:

> Where a circuit court finds that all or portions of the audio tape taken at the family law master's hearing are inaudible and that the inaudible portions are essential to the resolution of the petition for review, the circuit court may utilize the provisions of W.Va.Code, 48A–4–10(d) (1990), or of Rule 80(e) of the West Virginia Rules of Civil Procedure to obtain the missing evidence.

*See also* syl. pt. 5, *Higginbotham, supra.*

■ Accordingly, upon the above authorities, this action is remanded to the circuit court for further development or restoration of the record concerning the appellant's assertion that the circuit court should have awarded her $16,167 for lost wages, $405 for travel expenses, $3,900 for automobile ex-

2. As *W.Va.R.Civ.P.* 80(e) states:

> *Use of statement of evidence in lieu of transcript.*—In the event a stenographic or mechanical report of the proceedings had and testimony taken at a hearing or trial before the court was not made or in the event a reporter's stenographic or mechanical record thereof has become lost or a transcript thereof is not obtainable, any party to the action may prepare a statement of the proceedings from the best available means, including his recollection, for use instead of a transcript thereof. The statement shall be served upon all other adverse parties within a reasonable time after the hearing or trial, and the adverse parties may serve objections or amendments thereto within 10 days after service of the statement upon them. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the court for settlement and approval and when and as settled and approved such statement becomes a part of the record when it is signed by the judge and filed with the court.

penses and $100 for her daughter's summer school tuition.

■ Finally, the family law master recommended that the appellant receive an equitable distribution of the appellee's railway pension and back wage award. As this Court has previously indicated, those matters are generally subject to equitable distribution. *See* syl. pts. 4 and 5, *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987), concerning the equitable distribution of pension funds; syl. pts. 1 and 2, *Hardy v. Hardy,* 186 W.Va. 496, 413 S.E.2d 151 (1991), contrasting back wage awards from disability awards and holding that back wage awards are generally subject to equitable distribution, and, generally, Lee R. Russ, Annotation, *Divorce: Equitable Distribution Doctrine,* 41 A.L.R.4th 481 (1985). The appellee asserts, however, that, inasmuch as those matters were unrelated to the questions of child custody and child support, the family law master had no jurisdiction to consider the pension and back wage issues. As syllabus point 1 of *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989), states in part: "A family law master lacks jurisdiction to hear a petition for modification of an order when the modification proceeding does not involve child custody, child visitation, child support or spousal support."

■ An assessment of the record before us, however, reveals a quite different context from that of *Segal.* In *Segal,* this Court held that neither the family law master nor the circuit court had jurisdiction, in a "modification" proceeding, to consider a former wife's use of the husband's condominium or whether the former wife would be required to pay part of a federal tax deficiency. Those issues had been raised by the husband in a petition to modify the divorce decree. In this action, however, the procedure followed below was convoluted, as indicated above, and included the filing of various petitions for relief by the respective parties. In particular, although the appellee asserts that the controversy now before this Court arose from his petition for a change of custody concerning his daughter, the railway pension and back wage issues (as well as the issues with regard to expenses discussed above) were raised by the appellant in a separate petition filed in the circuit court. Importantly, the 1990 divorce decree mentioned neither the Western Railway Company pension nor the back wage award, and the appellant alleged in her petition that the appellee had "concealed marital assets" during the original divorce proceedings. *See W.Va.Code,* 48-2-33 [1993], requiring the disclosure of assets in a divorce action.

■ Therefore, under the circumstances of this action, this Court is of the opinion that the family law master had jurisdiction, following the divorce, to consider the issues of the appellee's pension and back wage award. *See State ex rel. Erickson v. Hill,* 191 W.Va. 320, 445 S.E.2d 503 (1994), referring to family law masters in the context of financial disclosure procedures. However, as with the issues concerning expenses, discussed above, the audio tapes of the hearings conducted by the family law master are incomplete and totally inadequate with regard to whether the appellant is, in fact, entitled to an equitable distribution of the appellee's railway pension and back wage award. Thus, although we have determined that the family law master had jurisdiction to consider the pension and back wage issues, this action must also be remanded for further development or restoration of the record concerning those matters. Specifically, the audio tapes contain no testimony referring to the pension or the back wage award, and the only indication in the record of the value of those items is the assertion of the appellant in her petition that she was entitled to $15,000 with regard to the appellee's pension and $7,500 with regard to the back wage claim. As stated above, more specific findings as to those amounts will need to be made by the circuit court upon the remand of this action.

Upon all of the above, therefore, the November 15, 1994, order of the Circuit Court of Wyoming County awarding the appellant $4,054.80 for expenses incurred in support of her daughter is affirmed. However, the rulings of the circuit court concerning the issues of lost wages, travel expenses, automobile expenses and tuition expenses, and the issues concerning equitable distribution of the appellee's Norfolk & Western Railway pension and the appellee's back wage award, are reversed, and this action is remanded to the

circuit court for proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded.