558 S.E.2d 607

Edison R. HICKMAN, II, Plaintiff Below, Appellee,

v.

Karen Joyce HICKMAN, Defendant Below/Appellant.

No. 29331.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Oct. 26, 2001.

Deborah E. Reed, Reed, Moffatt & Associates, Charleston, for the Appellant.

Parrish McKittrick, Charleston, for the Appellee.

PER CURIAM.

Karen Joyce Hickman, appellant/defendant below (hereinafter referred to as "Ms. Hickman"), appeals from an order of the Circuit Court of Kanawha County which modified her divorce decree. The modification order reduced her monthly child support payment, terminated alimony and terminated the payment of health insurance premiums made by Ms. Hickman's former spouse, Edison R. Hickman, II, appellee/plaintiff below (hereinafter referred to as "Mr. Hickman"). In addition, the order required Ms. Hickman pay to Mr. Hickman approximately $18,131.40 for "overpayments" made during the pendency of the modification proceedings. Here, Ms. Hickman requests this Court to reinstate the terms of the divorce decree. Alternatively, Ms. Hickman asserts that the trial court abused its discretion by imposing a retroactive judgment of $18,131.40 as "overpayments" against her. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm, in part, and reverse, in part, the decision of the Circuit Court of Kanawha County, and remand the case for further proceedings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties were married on May 20, 1990, in Giles County, Virginia. At the time of the marriage, Ms. Hickman had a daughter who was born out of wedlock on January 6, 1988. Mr. Hickman adopted the child after the parties married. During their marriage, the parties lived in Kanawha County, West Virginia. Mr. Hickman was employed by E.I. Dupont de Nemours, Inc., in Belle, West Virginia. Ms. Hickman was a homemaker and was not employed outside the home, primarily because of the special care she had to provide to the parties' daughter. Their

daughter was diagnosed as suffering from a muscle disease called hypotonic diplegia.

In October of 1994, Mr. Hickman filed for divorce. On February 25, 1997, the family law master submitted a recommended order. The relevant factors of the recommended order were that the parties be divorced, that Mr. Hickman pay child support,[1] alimony[2] and premiums for Ms. Hickman's medical insurance coverage.[3] Mr. Hickman filed exceptions to the recommended order. The circuit court denied the exceptions. By order entered July 22, 1998, the circuit court adopted the family law master's recommended order.[4]

On August 6, 1998, Mr. Hickman filed for a modification of the divorce decree based upon a reduction of income due to his retirement on July 30, 1998. During the modification hearings, Mr. Hickman presented evidence from the treating physician of the parties' daughter. The daughter's physician opined that the child was developing normally and no longer needed special care from her mother. The family law master submitted a recommended order requiring the sale of the parties' residence, a reduction in child support, the termination of alimony and the termination of premium payments for Ms. Hickman's health insurance.

On August 18, 2000, the circuit court entered an order adopting the family law master's recommendation, except as to the sale of the parties' residence. The circuit court made its order retroactive to the date Mr. Hickman filed for modification of the final divorce decree. Consequently, judgment was rendered against Ms. Hickman for the "overpayment" of child support, alimony and insurance premiums. The "overpayment" totaled approximately $18,131.40. It is from this order that Ms. Hickman now appeals.

1. The amount of child support was $493.32 per month.

2. The amount of alimony was $400.00 per month, until the health of the parties' daughter stabilized.

3. The amount of the health insurance premiums was initially $260.05 per month.

## II.

### STANDARD OF REVIEW

Ms. Hickman appeals from the rulings in the circuit court's order that adopted the recommendations of the family law master.[5] In appeals involving domestic relations matters, we employ a three-pronged standard of review established in Syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

This Court has also held that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

## III.

### DISCUSSION

*A. Modification.* Ms. Hickman contends that there was no basis for the trial court to modify the divorce decree. Our cases have held that a trial court may modify a divorce decree when there has been a substantial change of circumstances which warranted a modification. *See Price v. Price*, 205 W.Va. 252, 257, 517 S.E.2d 485, 490 (1999); *Zirkle v. Zirkle*, 172 W.Va. 211, 217, 304 S.E.2d 664, 671 (1983). Based upon

4. The final divorce order was not appealed.

5. Ms. Hickman has not appealed the circuit court's decision that rejected the family law master's recommendation to sell the parties' residence.

the record below, we find that a substantial change of circumstances was shown to permit a modification of the divorce decree.

When Mr. Hickman filed for divorce, he was employed and had a monthly net income of approximately $2,460.78. The divorce decree required Mr. Hickman to pay approximately $1,677.14 a month as alimony, child support and other expenses. At the time of the modification hearing, Mr. Hickman was retired and had a monthly net income of $1,573.67. Based upon Mr. Hickman's monthly retirement income, his obligations under the divorce decree exceeded his monthly retirement income.

In reducing the child support, the trial court followed the child support guidelines. Recalculation of the child support resulting from Mr. Hickman's retirement income necessitated a reduction in the monthly child support payment. The child support payment was reduced to $277.33. On the issue of alimony, the trial court correctly determined that the alimony was based upon the health of the parties' child. That is, alimony payments were contingent upon the child's requirements for special care that would not permit Ms. Hickman to obtain employment. During the modification hearing, there was evidence from the child's physician that the child was developing normally and no longer needed special care from Ms. Hickman. Thus, Ms. Hickman was not precluded from working outside the home. As to the health insurance premiums, evidence was introduced showing that Ms. Hickman had skills to obtain gainful employment. In fact, the record demonstrated that Ms. Hickman was working part-time out of her home transcribing medical records.[6] In view of this evidence, we see no basis for disturbing the trial court's decision to modify the divorce decree.

■ *B. Applying Modification Retroactively.* Ms. Hickman contends that, should

this Court uphold the modification, this Court should reverse the decision to apply such modification retroactively. By making the modification retroactive, the circuit court required Ms. Hickman pay to Mr. Hickman the sum of approximately $18,131.40.

Ms. Hickman asserts that under Rule 29 of the West Virginia Rules of Practice and Procedure for Family Law, the circuit court had discretionary authority to make the modification retroactive. Rule 29 states, in part, that "[u]nder appropriate circumstances, modification of an award of alimony or child support *may* be made retroactive to the date of service of the motion for modification upon opposing party."[7] (Emphasis added). Ms. Hickman contends that the imposition of a judgment of $18,131.40 is a financial hardship to her. Unfortunately, the trial court's order is silent as to any findings regarding Ms. Hickman's ability to pay such a judgment.

Because this Court has an inadequate record on the issue, we reverse and remand the matter to the circuit court. On remand, an adequate record must be developed to establish Ms. Hickman's ability to pay such a judgment and what, if any, financial hardship will result to Ms. Hickman from said judgment.

## IV.

### CONCLUSION

In view of the foregoing, the circuit court's modification order is affirmed, in part, and reversed, in part, and this case is remanded for disposition consistent with this Opinion.

Affirmed, in part; Reversed, in part; and Remanded.

---

6. Ms. Hickman's employment income was approximately $639.62 per month.

7. Effective September 27, 2000, the Supreme Court replaced the West Virginia Rules of Practice and Procedure for Family Law with the West Virginia Rules of Practice and Procedure for Family Court. Under the new rules the issue of retroactivity of a modification order is under

Rule 23, and states: "Except for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion of relief." *See also* W. Va.Code § 48-11-107 (2001) (mandating retroactive enforcement of modified child support order).